Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| EDMUNDO ÁLVAREZ, ROSA M. TAVARES ROMÁN Y LA SOCIEDAD DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Apelados<br><br>V.<br><br>SUCN. DE WILFREDO TORRES RAMOS COMPUESTA POR ZAIDEE MORALES MALDONADO; POR SÍ Y COMO MADRE CON PATRIA POTESTAD Y CUSTODIA SOBRE ROBERTO JOMAR TORRES MORALES; Y ZAH[Y]MAR CRISTAL TORRES; WILFREDO O. TORRES BARRETO; Y SHEILA TORRES LORENZO H/C/C ARENERO LA MONTAÑA<br><br>Apelantes | KLAN202400318 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.:<br>A1CI200600652<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 16 de julio de 2024.

El 2 de abril de 2024, compareció ante este foro apelativo, la Sucesión del señor Wilfredo Torres Ramos compuesta por la señora Myrna E. Torres Barreto (en adelante, señora Torres Barreto), el señor Roberto Torres Morales (en adelante, señor Torres Morales), la señora Zahymar Cristal Torres Morales (en adelante, señora Torres Morales), el menor Wilfred L. Torres Ramos (representado por su madre con patria potestad Johanna Ramos) y la señora Sheila Torres Lorenzo (en adelante, señora Torres Lorenzo, y en conjunto parte apelante), mediante recurso de *Apelaci[ó]n.* Por medio de este,

nos solicita que revisemos la *Sentencia Sumaria* emitida el 17 de febrero de 2021, y notificada en la *Notificación Enmendada* el 9 de enero de 2024. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por el señor Edmundo Álvarez Cruz (en adelante, parte apelada o señor Álvarez Cruz).

Por los fundamentos que adelante se esbozan, se revoca el dictamen apelado y se devuelve el caso al Tribunal de Primera Instancia para que celebre vista en sus méritos.

**I**

Los hechos que propiciaron la controversia ante nos, se remontan a una *Demanda* sobre cobro de dinero presentada por la parte apelada en contra de la parte apelante. En síntesis, la parte apelada sostuvo que, el señor Wilfredo Torres Ramos (en adelante, señor Torres Ramos), realizaba negocios como Arenero la Montaña y que antes de morir, firmó el 11 de abril de 1996 en Isabela PR, una declaración jurada ante notario, mediante la que hizo constar que había obtenido del señor Álvarez Cruz la cantidad de $38,194.44 para ser utilizada en el negocio de extracción de arena. Surge además, de las alegaciones de la *Demanda* que, las partes habían acordado que el señor Torres Ramos pagaría la mencionada cantidad en un plazo de dos (2) años contados a partir de la declaración jurada. De igual forma, la parte apelada alegó que, había realizado varias gestiones de cobro previo a la muerte el señor Torres Ramos. Por otro lado, acotó que, para el 23 de mayo de 2001, había recibido una misiva firmada por la señora Zaydeé Morales Maldonado (exesposa del señor Torres Ramos y en adelante, señora Morales Maldonado), como representante del negocio familiar Arenero La Montaña, donde solicitó la certificación del balance pendiente de pago al 25 de abril de 2001. Indicó que, respondió el 11 de julio de 2001, que existía un balance pendiente de pago de

$48,857.88, y que, posteriormente, envió una carta a la señora Morales Maldonado donde le solicitó información sobre el estatus de la liquidación de los bienes hereditarios y le requirió el pago de la deuda. Sostuvo que, no recibió respuesta y que por ello, en la demanda reclamaba la suma de $48,857.88 más intereses, para un total de $83,057.00.

El 25 de agosto de 2006, la señora Morales Maldonado presentó la *Moción Solicitando Prórroga para Contestar*, donde solicitó treinta (30) días adicionales para presentar su contestación a la *Demanda*.

El 20 de septiembre de 2006, la parte apelada presentó la *Moci[ó]n Solicitando Anotaci[ó]n de Rebeld[í]a y Señalamiento*. Por medio de la aludida moción, solicitó la anotación de rebeldía sobre el señor Wilfredo O. Torres Barreto (en adelante, señor Torres Barreto), la Sucesión del señor Torres Ramos, a través de su viuda la señora Myrna E. Barreto Pérez y la señora Torres Barreto, debido a que había transcurrido en exceso el término para contestar la *Demanda*.

El 13 de octubre de 2006, la señora Morales Maldonado, por sí y en representación de la señora Torres Morales, presentó la *Moción Informativa Sobre Menor Parte de la Sucesión*. A través de esta, expresó que, la parte apelada no había incluido a la señora Torres Morales, quien al momento de la presentación de la *Demanda* era menor y también parte de la Sucesión.

El Tribunal de Primera Instancia, mediante *Resolución* emitida el 30 de octubre de 2006, le concedió a la señora Morales Maldonado el término de veinte (20) días para contestar la demanda por sí y a nombre de sus hijos, y le apercibió que de incumplir con lo ordenado le anotaría rebeldía. En la misma *Resolución*, le anotó rebeldía a la señora y al señor Torres Barreto.

Así las cosas, el 17 de enero de 2007, el foro primario emitió *Resolución*, donde expresó que, parecían existir partes indispensables que no habían sido incluidas en el pleito ni emplazadas, y eran menores. Le ordenó a la parte recurrida a acreditar la jurisdicción del tribunal sobre estas, y le concedió veinte (20) días bajo apercibimiento de desestimación.

El 19 de enero de 2007, fue presentada por la parte apelada la *Moci[ó]n Solicitando Anotaci[ó]n de Rebeld[í]a, Informativa y Solicitud de Vista*, mediante la cual solicitó nuevamente que se le anotara la rebeldía a la señora Morales Maldonado por sí y en representación de sus hijos. En la misma fecha, la parte apelada también presentó la *Demanda Enmendada*.

Por otro lado, el foro de primera instancia emitió una *Orden* el 7 de febrero de 2007, donde le concedió el término final de diez (10) días a la señora Morales Maldonado para contestar la demanda.

De igual manera, el foro primario, emitió una *Orden* el 26 de marzo de 2007, en la que expresó que faltaban demandados por emplazar. Le concedió, además, veinte (20) días finales al señor Álvarez Cruz para activar el proceso, con apercibimiento de que de no hacerlo, se archivaría el caso. De igual manera, le anotó la rebeldía a la señora Morales Maldonado, y a sus hijos.

La parte apelada presentó la *Moción Urgente*, el 12 de abril de 2007, con el propósito de solicitar la expedición del emplazamiento personal a la señora Torres Lorenzo, y la autorización para emplazar por edicto a los herederos desconocidos del señor Torres Ramos. Posteriormente, el 25 de abril de 2007, el señor Álvarez Cruz, presentó la *Moción en Cumplimiento de Orden* donde volvió a solicitar la expedición del emplazamiento personal a la señora Torres Lorenzo.

El 30 de abril de 2007, la señora Morales Maldonado, por derecho propio, presentó la *Contestación a Demanda*. Mientras que,

en igual fecha, la señora Morales Maldonado también presentó la *Moción Informativa en Oposición a Anotación en Rebeldía,* donde expresó que la señora Torres Morales, quien era parte indispensable en el caso, aún no había sido emplazada. Solicitó, además, que se dejara sin efecto la anotación de rebeldía.

De acuerdo surge del expediente, el 10 de mayo de 2007, fue diligenciado el emplazamiento de la señora Torres Lorenzo[1]. Asimismo, el 31 de mayo de 2007, la parte apelada presentó la *Moci[ó]n Sometiendo Afid[á]vit de Publicaci[ó]n de Edicto de Emplazamiento.* A esta anejó el afidávit del periódico Primera Hora que certificó haber publicado el emplazamiento por edicto.

El 14 de junio de 2007, la señora Torres Lorenzo presentó la *Moci[ó]n Solicitando Prorroga para Contestar Demanda,* donde solicitó que se le concediera un término adicional de veinte (20) días para contestar la demanda. Por otra parte, el Tribunal de Primera Instancia emitió *Resolución* el 9 de julio de 2007. Según surge de esta, el foro *a quo,* mantuvo la anotación de rebeldía y determinó que la señora Morales Maldonado y sus hijos se habían sometido a la jurisdicción. Le apercibió a la señora Morales Maldonado que debía comparecer por medio de abogado. De igual manera, le concedió el término de diez (10) días a la señora Torres Lorenzo para contestar la demanda. Finalmente, le anotó la rebeldía a los herederos desconocidos del señor Torres Ramos.

Posteriormente, la Sucesión del señor Torres Ramos presentó la *Contestaci[ó]n a Demanda* el 2 de agosto de 2007.

Luego de varias incidencias procesales innecesarias pormenorizar, el 11 de abril de 2008, el señor Álvarez Cruz presentó la *Moci[ó]n de Sentencia Sumaria.* A su moción de sentencia sumaria, anejó una declaración jurada suscrita por el señor Torres

---

[1] Presentado ante el TPI el 21 de mayo de 2007.

Ramos el 11 de abril de 1996, donde reconoció la deuda por la cantidad de $38,194.44. De igual forma, anejó una declaración jurada suscrita por sí mismo, donde indica que, le prestó al señor Torres Ramos la cantidad de $38,194.44, pero que, posteriormente totalizó la cantidad de $48,857.88, junto a los intereses.

Así las cosas, el 15 de agosto de 2008, el foro de primera instancia emitió la *Relación Procesal del Caso, Determinaciones de Hechos, Conclusiones de Derecho y Sentencia Sumaria Parcial*. En virtud de esta, declaró Ha Lugar la *Moci[ó]n de Sentencia Sumaria*, y dictó *Sentencia Sumaria Parcial* a favor de la parte apelada. Consecuentemente, condenó a la parte apelante, con excepción de la señora Torres Barreto, a pagar solidariamente a la parte apelada la suma principal de $48,857.88, más el interés legal de 6% acumulado desde el 12 de julio de 2001, hasta la fecha de la *Sentencia Sumaria Parcial*. Igualmente, en la misma fecha emitió *Sentencia Parcial* donde paralizó los procedimientos respecto a la señora Torres Barreto por existir un proceso de quiebra ante la Corte de Quiebra de los Estados Unidos.

Acaecidas varios incidentes procesales, innecesarios pormenorizar, el 24 de junio de 2016, la parte apelada presentó la *Moción Solicitando Ejecuci[ó]n de Sentencia*. Alegó que, había realizado múltiples gestiones dirigidas a cobrar lo adeudado y dispuesto mediante la *Sentencia Sumaria Parcial*, pero que, tales gestiones habían sido infructuosas. Conforme a lo anterior, solicitó al foro primario la ejecución de sentencia y que expidiera la orden de venta de bienes.

Transcurridos algunos años, el 26 de agosto de 2019, el Tribunal de Primera Instancia emitió una *Orden* donde declaró No Ha Lugar la *Moción Solicitando Ejecuci[ó]n de Sentencia*, y expresó lo siguiente:

[...] En el presente caso este tribunal, mediante Orden de 18 de marzo de 2016, decretó la reapertura del caso en cuanto a Myrna Eunice Torres Barreto. En relación a ésta, quien es parte indispensable, no surge que se haya emitido sentencia alguna.

En esa misma fecha, se emitió una *Orden*, mediante la cual le ordenó a la parte apelada a mostrar causa en diez (10) días por la cual no se debía desestimar el caso por falta de sentencia en cuanto a parte indispensable.

El 3 de diciembre de 2019, la parte apelada presentó la *Moci[ó]n en Solicitud de Sentencia Sumaria*. En esta, propuso nueve (9) hechos que, a su juicio, no estaban en controversia. Señaló, además, que los hechos propuestos estaban probados en la *Sentencia Sumaria Parcial* previamente emitida por el foro *a quo*. Sostuvo que, procedía que se dictara sentencia sumaria en contra de la señora Torres Barreto y que, como miembro de la Sucesión del señor Torres Ramos, debía pagar solidariamente a la parte apelada la suma principal de $48,857.88, más el interés legal prevaleciente desde el 12 de julio de 2001. Mientras que, el 16 de diciembre de 2019, el Tribunal de Primera Instancia emitió una *Orden* donde le concedió a la parte apelante treinta (30) días para exponer su posición respecto a la solicitud de sentencia sumaria.

La parte apelada presentó la *Moci[ó]n en Solicitud de que se Dicte Sentencia*, el 10 de febrero de 2020. Por medio de esta, expresó que, había transcurrido el termino concedido a la señora Torres Barreto para expresarse respecto a la solicitud de sentencia sumaria sin que esta lo hiciera. Por ello, solicitó que se dictara sentencia sumaria.

El 17 de febrero de 2021, la primera instancia judicial emitió *Sentencia Sumaria*, notificada el 1ro de marzo de 2021. En esta, esbozó las siguientes determinaciones de hechos:

1. El fallecido Wilfredo Torres Ramos hacía negocios como *Arenero La [Montaña]*, negocio que, tras este

fallecer, heredaron los miembros de la Sucesión demandada.

2. Antes de morir, el día 11 de abril de 1996 en Isabela, P.R., don Wilfredo Torres Ramos firmó una declaración jurada ante el notario Calixto A. López González, en la que hizo constar que había obtenido del Sr. Edmundo Álvarez, demandante de epígrafe, la cantidad de $38,194.44 para ser usados en el negocio de extracción de arena. Era el acuerdo entre las partes que dicha cantidad de dinero se pagaría en el plazo de dos años contados a partir de la fecha en que fue suscrita la declaración anterior.

3. Ante el incumplimiento de pago por parte del causante, el demandante realizó varias gestiones de cobro directamente al señor Torres Ramos, antes de éste morir.

4. El 23 de mayo de 2001, el demandante recibió una carta firmada por la codemandada Sra. Zaideé Morales, ex esposa del causante, solicitándole que certificara cuál era el balance pendiente de pago a éste. Dicha certificación fue solicitada a los fines de que el auditor, el CPA Javier Hernández, hiciera una auditoría de las cuentas por pagar dejadas por el causante don Wilfredo Torres Ramos. La Sra. Zaideé Morales suscribió y remitió dicha carta, según se desprende de ésta, como representante del negocio familiar *Arenero La Montaña*.

5. La solicitud de certificación de balance de la deuda de dinero, fue contestada mediante carta del 11 de junio de 2001, depositada en el correo el 12 de julio de 2001. En la carta se informó que el balance adeudado y pendiente de pago era de $48,854.88, al 25 de abril de 2001. La carta fue recibida por el CPA Javier Hernández el día 17 de julio de 2001.

6. El día 20 de agosto de 2004, el demandante cursó carta a la Sra. Zaideé Morales en la que solicitaba información del status de la liquidación de los bienes hereditarios y requiriendo el pago de la descrita deuda. La misma fue recibida por Ovidio Morales, quien acusó su recibo el día 24 de agosto de 2004.

7. Mientras se tramitaba este caso, la parte demandante intentó sin éxito que se le permitiera comparecer e intervenir como acreedor a los trámites particionales del caudal del causante, caso AAC2004-0116, de esta Sala de Aguadilla. Entonces presentó la moción de sentencia sumaria en este caso, la cual fue declarada Ha Lugar, por lo que el [tribunal] dictó sentencia parcial el 15 de agosto de 2008 a favor de la parte demandante, condenando a los miembros de la Sucesión de Wilfredo Torres Ramos, excepto a Myrna Eunice Torres Barreto, a pagar solidariamente a la parte demandante la suma de $48,857.88 más el interés legal -6.00%- acumulado desde el 12 de julio de 2001 hasta la fecha en que se dictó sentencia parcial. Determinó

además que el balance resultante, principal más intereses hasta el día en que se dictó sentencia, a su vez devengará intereses por sentencia a razón del 6.00% desde esta fecha hasta su pago total, incluyendo costas y honorarios de abogado, de haber sido concedidos. Se le impuso a la parte demandada el pago de las costas y gastos del proceso.

8. Ese mismo día, en cuanto a Myrna Eunice Torres Barreto este Tribunal dictó sentencia parcial, decretando la paralización de los procedimientos en el caso por haberse acogido a los beneficios de la Corte de Quiebra de los Estados Unidos para el Distrito de Puerto Rico. La parte demandante solicita que se dicte sentencia sumaria en contra de esta parte.

Consecuentemente, el foro de primera instancia declaró Ha Lugar la *Moci[ó]n de Sentencia Sumaria* presentada por la parte apelada en contra de la señora Torres Barreto, y le ordenó pagar solidariamente al señor Álvarez Cruz la suma principal de $48,857.88, más el interés legal prevaleciente desde el 21 de julio de 2001 hasta la fecha de la sentencia. Se le impuso, además, el pago de la suma de $3,000.00 en concepto de costas, gastos y honorarios de abogado.

El 16 de marzo de 2021, la señora Torres Barreto, presentó la *Reconsideración.* Entre sus alegaciones, surge que, el foro de primera instancia no debió imponerle el pago de $3,000.00 por concepto de costas, gastos y honorarios de abogado, debido a que no surgía de ninguna forma que esta hubiese incurrido en conducta temeraria. Bajo el mismo supuesto, añadió que, no procedía la imposición de intereses desde el 12 de julio de 2001 y que, no había sido justificada la concesión de tal sanción, ni se estableció de dónde surgía la aludida fecha. Así como que, de su parte no hubo ninguna actuación temeraria que justificara la imposición de ese tipo de interés sobre la cuantía impuesta. Finalmente, argumentó que, faltaba parte indispensable en el pleito, toda vez que la señora Torres Morales, en ese entonces menor de edad, ni la señora Torres Lorenzo, fueron emplazadas conforme a derecho. Sostuvo que, el

diligenciamiento del emplazamiento de la señora Torres Lorenzo se realizó once (11) meses más tarde de haberse radicado la demanda sin que se hubiese presentado una solicitud de prórroga. Alegó que, el hecho de que la señora Morales Maldonado, madre de la señora Torres Morales, hubiese presentado una moción donde informaba sobre la existencia de una menor de edad, no constituía haberse sometido a la jurisdicción del tribunal, ni una contestación a la demanda. De igual manera, acotó que, no fue hasta el 19 de enero de 2007, que se enmendó la *Demanda* para incluir a la señora Torres Morales y que, no se desprendía del expediente que, una vez enmendada la demanda se hubiese solicitado la expedición de un emplazamiento en contra de la señora Torres Morales. Puntualizó que, debido a que el Tribunal no adquirió jurisdicción sobre la señora Torres Morales ni la señora Torres Lorenzo, la *Sentencia Sumaria Parcial* era nula, por falta de parte indispensable. A tales efectos, le solicitó al foro *a quo* que reconsiderara su determinación y desestimara la demanda.

Así las cosas, el 17 de marzo de 2021, el Tribunal de Primera Instancia emitió *Resoluci[ó]n*. En virtud de esta, declaró Ha Lugar la *Reconsideración* en cuanto a los $3,000.00 en costas, gastos y honorarios de abogado y el pago de intereses desde el 2001. Sin embargo, determinó que, respecto al contenido de *la Sentencia*, prevalecía en todos los demás aspectos.

El señor Álvarez Cruz presentó el 4 de enero de 2024, la *Moción Urgente Solicitando Suspensi[ó]n de Subasta y Solicitando Notificaci[ó]n de Sentencia Enmendada*. Le solicitó al foro de primera instancia que se notificara nuevamente la *Sentencia* emitida el 17 de febrero de 2021, mediante el formulario OAT 1812, para fines de que se incluyera al señor Torres Morales y se le notificara a las direcciones que surgían del expediente del tribunal.

Con fecha de 9 de enero de 2024, el Tribunal de Primera Instancia emitió una *Resolución,* donde ordenó que se notificara la *Sentencia* de 17 de febrero de 202[1][2] mediante formulario OAT 1812 e incluir al señor Torres Morales, y se le notificara a las direcciones que surgen del expediente y que se notificara la *Sentencia* enmendada mediante el formulario OAT 686. En igual fecha fue emitida la *Notificación Enmendada* junto a la *Sentencia Sumaria* emitida el 17 de febrero de 2021.

El 22 de enero de 2024, la señora Torres Barreto presentó la *Reconsideraci[ó]n.* Entre otras cosas, sostuvo que, la entonces menor, señora Torres Morales, no había sido emplazada conforme a derecho. Acotó que, la parte apelada tenía la obligación de enmendar la demanda y solicitar al foro primario que emitiera el emplazamiento a nombre de la entonces menor, y diligenciarlo en la persona de la menor y de su madre, la señora Morales Maldonado. Lo anterior, con el propósito de garantizar que la señora Torres Morales tuviese conocimiento de la acción en su contra y así poder defenderse. Aseguró que, la parte apelada no cumplió con tal obligación. De igual manera, reiteró que, la *Sentencia Sumaria Parcial* era nula, en tanto faltaba parte indispensable, ya que no se había adquirido jurisdicción sobre la señora Torres Morales ni la señora Torres Lorenzo. Es por lo que, solicitó al foro *a quo* que reconsiderara su determinación y desestimara la *Demanda.*

Por otro lado, la parte apelada presentó la *Moción en Oposici[ó]n a Solicitud de Reconsideraci[ó]n* el 8 de febrero de 2024. Posteriormente, el Tribunal de Primera Instancia emitió una *Resolución* con fecha de 29 de febrero de 2024[3], donde declaró No Ha Lugar la *Reconsideraci[ó]n.*

---

[2] Por aparente error la *Resolución* le incluyó 17 de febrero de 2023.
[3] Notificada el 1ro de marzo de 2024.

Aun inconforme con la determinación del foro *a quo*, la parte apelante acudió ante este Tribunal y esgrimió los siguientes señalamientos de error:

1. Abus[ó] de su discreción el honorable Tribunal al imponer la suma de $3,000.00, por concepto de costas, gastos y honorarios de abogado, no habiéndose demostrado temeridad, ni presentado memorando de gastos y costas que justificara la cantidad impuesta, en abierta violación al debido proceso de ley.

2. Abusó de su discreción el honorable Tribunal de Primera Instancia al imponer intereses pre sentencia desde el 12 de julio de 2001, sin que mediara temeridad por parte de la apelante ni establecer de donde surgía la referida fecha.

3. Erró el Tribunal de Primera Instancia al emitir sentencia sumaria en contra de la apelante basado en las determinaciones de una sentencia sumaria parcial previa, que se emitió mientras ella se encontraba protegida por la Ley Federal de Quiebras, por lo que estaba impedida de poder controvertir las alegaciones.

4. Erró el Tribunal de Primera Instancia al emitir sentencia sumaria aun cuando la petición de sentencia sumaria no cumplía con los requisitos establecidos en las Reglas de Procedimiento Civil.

5. Erró el Tribunal de Primera Instancia al emitir sentencia sumaria en contra de la apelante basado en una sentencia sumaria parcial que se emitió sin jurisdicción sobre una de las partes, por lo que hay falta de parte indispensable.

6. Erró el honorable Tribunal al actuar en abierta violación al debido proceso de ley.

El 29 de abril de 2024, la parte apelada presentó el *Alegato en Oposici[ó]n a Apelaci[ó]n.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin

que se requiera llegar a la etapa de juicio.[4] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *González Meléndez v. Mun. San Juan et al.*, 2023 TSPR 95, 212 DPR 601 (2023); *Birriel Colón v. Econo y Otros*, 2023 TSPR 120, 213 DPR ___ (2023) *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622 (2022). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[5] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022). Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13. De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir

---

[4] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 808 (2020).

[5] *Velázquez Ortiz v. Gobierno Mun. De Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018).

preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra.

Cónsono con esto, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot*, supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992.

En armonía con la normativa reseñada, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otros*, supra; *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos. que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos

esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan*, supra. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd. Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

**B. Regla 44.1-Honorarios de Abogados**

La concesión de honorarios de abogado está regulada por la Regla 44.1 (d) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.

44.1 (d). La misma autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado procede con temeridad o frivolidad. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022); *SLG González-Figueroa v. SLG et al.*, 210 DPR 138 (2022). La *temeridad* se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. *Íd*; *SLG González-Figueroa v. SLG et al.*, supra, pág. 148; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Sobre este particular, nuestro más Alto Foro ha expresado también que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia." *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

Por otro lado, la frivolidad se define como "aquello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna." *Depto. Rec. v. Asoc. Rec. Round Hill*, 149 DPR 91, 100 (1999). Sólo lo claramente irrazonable o inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo. *Íd.*

En Feliciano *Polanco v. Feliciano González*, 47 DPR 722, 730 (1999), el Tribunal Supremo de Puerto Rico indicó que "[a] modo de ejemplo, constituyen actos temerarios los siguientes:

> [c]uando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto."

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la

otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010); *Pérez Rodríguez v. López Rodríguez*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, págs. 148-149; *Fernández v. San Juan Co.*, Inc., 118 DPR 713, 718 (1987).

Además, la imposición de honorarios de abogado, tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987). Nuestro más Alto Foro ha dispuesto que, la facultad de imponer honorarios de abogados es la mejor arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios. *SLG González-Figueroa v. SLG et al.*, supra, pág. 149.

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción. *Pérez Rodríguez v. López Rodríguez*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, pág. 150. Tampoco será variada la partida concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción. *Feliciano Polanco v. Feliciano González, supra*, a las págs. 728-729.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En su tercer señalamiento de error, la parte apelante sostiene que, incidió el foro *a quo* al emitir sentencia sumaria en su contra basada en determinaciones de hechos de una sentencia parcial previa, emitida mientras se encontraba protegida por la Ley Federal de Quiebras, por lo cual estuvo impedida de controvertir las alegaciones.

Asimismo, como cuarto señalamiento de error, la parte apelante aduce que, el Tribunal de Primera Instancia se equivocó al emitir sentencia sumaria aun cuando la solicitud de sentencia sumaria presentada por la parte apelada no cumplía con los requisitos establecidos en las Reglas de Procedimiento Civil.

Por encontrarse intrínsecamente relacionados, discutiremos ambos señalamientos de error de forma conjunta. De igual forma, adelantamos que, le asiste la razón.  Veamos.

Según reseñáramos, el 15 de agosto de 2008, el foro *a quo* emitió una *Sentencia Parcial* mediante la cual paralizó los procedimientos en cuanto a la señora Torres Barreto por esta encontrarse dentro de un procedimiento de quiebras ante la Corte de Quiebras de los Estados Unidos, Distrito de Puerto Rico. Asimismo, en igual fecha emitió la *Sentencia Sumaria Parcial*, en la cual declaró Ha Lugar la *Moci[ó]n de Sentencia Sumaria* presentada por la parte apelada el 11 de abril de 2008.  Por medio de la misma, condenó a la parte apelante, con excepción de la señora Torres Barreto, a pagar solidariamente a la parte apelada la suma principal de $48,857.88, más el interés legal de 6% acumulado desde el 12 de julio de 2001, hasta la fecha de la *Sentencia Sumaria Parcial*.

Transcurridas varias incidencias procesales, el 29 de abril de 2013, la Corte de Quiebras de los Estados Unidos, Distrito de Puerto Rico emitió *Order Dismissing Case* donde desestimó el caso de la señora Torres Barreto. Para el 2 de diciembre de 2019, la parte

apelada presentó la *Moci[ó]n en Solicitud de Sentencia Sumaria* donde propuso nueve (9) hechos que a su juicio no estaban en controversia. Argumentó que, tales hechos se encontraban probados en la *Sentencia Sumaria Parcial* previamente emitida por el foro *a quo*. Así las cosas, el 17 de febrero de 2021, el Tribunal de Primera Instancia emitió la *Sentencia Sumaria* apelada, donde incluyó hechos que entendió incontrovertidos, declaró Ha Lugar la *Moci[ó]n en Solicitud de Sentencia Sumaria* y le ordenó a la señora Torres Barreto pagar solidariamente al señor Álvarez Cruz la suma principal de $48,857.88.

En el ejercicio de nuestra función revisora nos corresponde: 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[6].

De un ponderado análisis del expediente ante nuestra consideración, surge que, la parte apelada no cumplió sustancialmente con las disposiciones de la Regla 36.3 de Procedimiento Civil, *supra*. Puesto que, no incluyó una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia

---

[6] *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 679.

sustancial.[7] La parte apelada, si bien incluyó unos hechos que a su juicio se encontraban incontrovertidos, se limitó a expresar que estos "habían sido probados" al haber sido esbozados por el Tribunal de Primera Instancia en la *Sentencia Sumaria Parcial* del 15 de agosto de 2008. Además, no incluyó una indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecían esos hechos, así como de cualquier otro documento admisible en evidencia que se encontrara en el expediente del tribunal.[8]

En cumplimiento con la normativa vigente sobre la sentencia sumaria, evaluamos de *novo* las determinaciones de hechos esbozadas por el Tribunal de Primera Instancia. Acogemos las siguientes determinaciones de hechos por no estar en controversia: (1), (2), (3), (4) y (8).

Ahora bien, la primera instancia judicial determinó que "no existe controversia sobre los hechos antes mencionados, porque los mismos forman parte de las determinaciones de hechos establecidos por este mismo Tribunal en la sentencia sumaria parcial dictada el 15 de agosto de 2008". Recordemos que, para esa misma fecha, se habían paralizado los procedimientos en cuanto a la señora Torres Barreto, conforme a la sección 362(a) de la Ley de Quiebras federal, 11 USC sec. 362(a). Tales hechos no se deben dar por incontrovertidos sin más, pues la *Sentencia Sumaria Parcial* fue emitida independiente de la señora Torres Barreto, por la paralización automática de los procedimientos en su contra.

Aunque según reseñáramos, el foro de primera instancia razonó que, no existían hechos en controversia en el caso de epígrafe, de nuestra revisión de *novo* pudimos constatar que en

---

[7] 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* supra, pág. 940; *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.
[8] 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

efecto existen hechos en controversia. En particular, entendemos que se encuentra en controversia la cuantía reclamada por la parte apelada de $48,857.88. Pues, según surge de las declaraciones juradas que forman parte del expediente, el señor Álvarez Cruz y el señor Torres Ramos habían acordado que este último le pagaría la cantidad de $38,194.44 a la parte apelada. No obstante, desconocemos cómo se llegó al total de $48,857.88 que la parte apelada reclama y que el foro *a quo* concedió, o qué cálculo se utilizó para llegar a esta, ya que ello no fue acreditado.

Cónsono con lo anterior, ante la existencia de hechos en controversia, el Tribunal de Primera Instancia no debió haber resuelto por medio de sentencia sumaria. Es por lo que, corresponde que se devuelva el caso ante el foro *a quo* con el propósito de que celebre una vista en su fondo, a los fines de dilucidar las controversias previamente identificadas.

Por motivo de que procede que se revoque la sentencia, se torna innecesaria la discusión de los errores 1, 2, 5 y 6.

**IV**

Por los fundamentos que anteceden, se revoca el dictamen apelado y se devuelve el caso al Tribunal de Primera Instancia para que celebre vista en sus méritos.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones